UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD BREES,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>HMS GLOBAL MARITIME INC, et al.,<br><br>　　　　　　　　　Defendants. | CASE NO. 3:18-cv-05691-RJB<br><br>ORDER GRANTING MOTIONS<br>FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on three motions for summary judgment. First, Defendants HMS Ferries, Inc. ("HMS Ferries") and Steve Caputo's ("Mr. Caputo") Motion for Summary Judgment re Dismissal of Plaintiff's 42 U.S.C. § 1983 Claims. Dkt. 130. Second, HMS Defendants Tara Reynolds, Mylinda Miller, Thomas Ripa, Dominick De Lango, and Derick Leenstra's (collectively "HMS Employee Defendants") Motion for Summary Judgment re 42 U.S.C. § 1983 Claims. Dkt. 122. Third, Defendants HMS Ferries, Inc., Steve Caputo, Mylinda Miller, Tara Reynolds, Derick Leenstra, Thomas Ripa, and Dominick De Lango's (collectively "HMS Defendants") Motion for Summary Judgment Dismissing Plaintiff's State Law Claims. Dkt. 114.

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT - 1

The Court is familiar with the motions, all materials filed in support of and in opposition to the motions, and the remainder of the record herein, and it is fully advised. For the reasons set forth below, the Court should (1) grant HMS Ferries and Mr. Caputo's Motion for Summary Judgment, (2) grant HMS Employee Defendants Motion for Summary Judgment, and (3) grant HMS Defendants' Motion for Summary Judgment Dismissing Plaintiff's State Law Claims.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

### A. FACTUAL BACKGROUND

This case arises from allegedly unlawful searches conducted by ferry personnel against Plaintiff Richard Brees when he attempted to board the ferry in his car. Dkt. 83. Pierce County contracts with Defendant HMS Ferries, Inc. ("HMS Ferries") to operate Pierce County's ferry system. Dkt. 46, at 2.

Plaintiff's Second Amended Complaint, the operative complaint, alleges two unlawful searches: the first occurring on May 17, 2018, and the second on May 18, 2018. Dkt. 83, at 8–10. In the first alleged search, Plaintiff claims that Mr. Caputo, General Manager ("GM"), HMS Ferries, Inc., alongside an unnamed Senior Ticketing Agent and Ferry Captain, attempted to search his vehicle. Dkt. 83, at 8–10. Plaintiff apparently resisted the search but was allowed to board the ferry. Dkt. 83, at 9.

In the second alleged search, Plaintiff claims that an "angry GM" initiated a retaliatory search of his vehicle. Dkt. 83, at 9–10. Plaintiff alleges that he initially resisted the search, but "under duress" and "[d]esperate to get home, … [he] walked to his [vehicle] trunk, opened it, and said 'fine, I'll play along, I have to get home, my wife is out of town, and our pets need care, so here search away.'" Dkt. 83, at 10–11. Plaintiff alleges that ferry personnel then searched his car's trunk and instructed Plaintiff to open a large bag, the contents of which were inspected.

Dkt. 83, at 11. The operative complaint provides that, after the search was completed, Plaintiff told the GM, "I'll see you in court asshole." Dkt. 83, at 11. Mr. Caputo radioed other ferry personnel and told them Plaintiff was not allowed to board the ferry. Dkt. 83, at 11. Plaintiff was apparently allowed to board the next ferry, approximately one hour later. Dkt. 130, at 7.

Plaintiff alleges that he filed a "Claim for Damages with Pierce County Risk Management Division, alleging violations of both state and constitutional protections." Dkt. 83, at 11. Plaintiff claims that "Pierce County jointly further conspired with the HMS defendant(s) and other Pierce County employees to the harm of the plaintiff by fraudulently claiming an investigation of the defendant's damages took place, when in fact no or little investigation had actually taken place." Dkt. 83, at 11–12.

**B. PROCEDURAL HISTORY**

1. <u>HMS Ferries and Mr. Caputo's Motion For Summary Judgment Re Dismissal Of Plaintiff's 42 U.S.C. § 1983 Claims</u>

The operative complaint provides, in part, that HMS Ferries and Mr. Caputo violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments. Dkt. 83. HMS Ferries and Mr. Caputo filed a motion for summary judgment, arguing that Plaintiff has failed to adduce facts necessary to support these claims. Dkt. 130. Plaintiff filed a response brief in opposition to the motion. Dkt. 142. HMS Ferries and Mr. Caputo filed a reply. Dkt. 153.

2. <u>HMS Employee Defendants' Motion for Summary Judgment re 42 U.S.C. § 1983 Claims</u>

HMS Employee Defendants filed a motion for summary judgment. Dkt. 122. HMS Defendants argue that Plaintiff's claims lack any factual basis and that Plaintiff does not allege that any of the individual HMS Employee Defendants participated in the alleged search events.

Dkt. 122. Plaintiff filed a response brief in opposition to the motion. Dkt. 140. HMS Employee Defendants filed a reply. Dkt. 151.

### 3. HMS Defendants' Motions for Summary Judgment Dismissing Plaintiff's State Law Claims

HMS Defendants filed a Motion for Summary Judgment Dismissing Plaintiff's State Law Claims. Dkt. 114. HMS Defendants request dismissal of Plaintiff's three remaining state law claims: (1) intentional infliction of emotional distress (known as an "outrage" claim in Washington), (2) fraud, and (3) violation of a criminal statute, RCW 9A.76.175, by providing a misleading report and witness statements to a public servant. HMS Defendants contend that, first, Plaintiff's allegations do not support an outrage claim; second, Plaintiff has not adequately pled his fraud claim and has not come forward with supporting evidence; and, third, the alleged violation of RCW 9A.76.175, even if true, does not give rise a private cause of action. Plaintiff filed a response brief in opposition to the motion. Dkt. 141. HMS Defendants filed a reply. Dkt. 149.

## II. DISCUSSION

### A. PRO SE STANDARDS

When a plaintiff proceeds pro se, a district court is required to afford plaintiff the benefit of any doubt in ascertaining what claims plaintiff raised in the complaint and argued to the district court. *Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008), (citing *Morrison v. Hall*, 261 F.3d 896, 899 n.2 (9th Cir. 2001)); *see also Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988) (pleadings of pro se civil rights plaintiff to be construed liberally, affording plaintiff benefit of any doubt).

Because plaintiff filed this complaint pro se, the court has construed the pleadings liberally and has afforded plaintiff the benefit of any doubt. *See Karim-Panahi*, 839 F.2d at 623.

However, "[p]ro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

### B. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will

discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990).

### C. PLAINTIFF'S 42 U.S.C. § 1983 CLAIMS AGAINST HMS FERRIES AND MR. CAPUTO

1. 42 U.S.C. § 1983 Standards

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

The operative complaint provides, in part, that HMS Ferries and Mr. Caputo violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments. Dkt. 83, at 12-15.

2. First Amendment Claim

For a First Amendment claim, a Plaintiff must show "that (1) [h]e was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty,* 818 F.3d 920, 932 (9th Cir. 2016) (citation omitted). Once a plaintiff has made such a showing, the burden shifts to the government to show that it would have taken the same action even in the absence of the protected conduct. *Id.*

To survive a motion for summary judgment, a plaintiff must adduce facts sufficient to create a triable issue as to whether he engaged in protected speech. *Flynn v. City of Santa Clara,* 388 F.Supp. 3d 1158 (N.D. Cal. 2019). Speech in a non-public form may be regulated as to time, place, manner, and content so long as the content regulation is viewpoint neutral. *Int'l Soc. For Krishna Consciousness of Cal., Inc.,* 764 F.3d 1044, 1049-50 (9th Cir. 2014). "[W]here a non-public forum is at issue, the court must inquire whether the challenged restriction is 'reasonable in light of the purpose served by the forum,' and is 'viewpoint neutral.'" *Id.*

Plaintiff's First Amendment claim is without merit. The Pierce County Ferry System ("PCFS") regulates speech, through its Passenger Code of Conduct ("PCC"), by precluding "foul, abusive, or disruptive language" to "provid[e] a safe and enjoyable experience for all … passengers." Dkts. 130; and 131. Approximately 12 times per year, HMS Ferries bars a passenger from boarding due to unruly and disruptive behavior; if a passenger persists in this behavior, they are banned. Dkt. 131, at 4.

The ferry holding area is a non-public forum. *See, e.g., Int'l Soc. For Krishna Consciousness of Cal., Inc.,* 765 F.3d at 1049–50 (concluding that an airport area and its sidewalks are a non-public forum). It is demarcated by physical barriers and signage, and vehicles and pedestrians not boarding the ferry at not permitted in the holding area during ferry operations. Dkts. 130; and 131.

To the extent that Plaintiff was precluded from boarding the ferry because he said to Mr. Caputo, "I'll see you in court, asshole," or used any other foul, abusive, or disruptive language, this behavior was in violation of the PCC. The PCC's regulation of speech does not violate Plaintiff's rights under the First Amendment as it is a reasonable regulation in light of the purpose of the ferry system—safely and efficiently transporting passengers and crew—and is

viewpoint neutral. *See, e.g., Int'l Soc. For Krishna Consciousness of Cal., Inc.,* 765 F.3d at 1049–50.

Furthermore, Plaintiff has not shown that any protected activity of his was a substantial or motivating factor in the defendants' conduct.[1] *See Nieves v. Bartlett,* __ U.S. __, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019) (quoting *Hartman v. Moore,* 547 U.S. 250, 260 (2006)) (holding that "[t]o prevail on a first amendment retaliation claim, a plaintiff must establish a 'causal connection' between the defendant's retaliatory animus and the plaintiff's 'subsequent injury'…. [A]n official's 'action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway'").

Therefore, Defendants HMS Ferries and Mr. Caputo's Motion for Summary Judgment should be granted as to its request to dismiss Plaintiff's § 1983 First Amendment claim.

3. <u>Fourth Amendment Claim</u>

An administrative search regime was promulgated by the United States Coast Guard ("USCG") under the Maritime Transportation Security Act of 2002 ("MTSA"), 46 U.S.C. §§ 70101–19. The search regime was established for vessel and port security to prevent and respond to transportation security incidents that may "result in a significant loss of life, environmental damage, transportation system disruption, or economic disruption in a particular area." 46 U.S.C.

---

[1] Plaintiff's response brief makes several references to possibly inadmissible evidence, including a partial audio recording (physically filed with the Court Clerk on a USB thumb drive) of the May 18, 2018 search encounter with Mr. Caputo—obtained without Mr. Caputo's consent. *E.g.,* Dkt. 142, at 13:25; *see generally* RCW 9.73.030 (providing that it is unlawful to record a private conversation without first obtaining the consent of all the persons engaged in the conversation); *Tilton v. McGraw-Hill Companies, Inc.*, C06-0098RSL, 2007 WL 777523, at *1 (W.D. Wash. Mar. 9, 2007) ("Private communications recorded without consent are inadmissible in civil or criminal cases. RCW 9.73.050.").

HMS Ferries and Mr. Caputo request that the Court strike various references to allegedly inadmissible evidence. Dkt. 153, at 4-8. The Court has reviewed the evidence referenced by Plaintiff and observes that none of it lends support to Plaintiff's claims. The Court need not decide at this time whether Plaintiff's references to the evidence at issue should be stricken.

§§ 70103(a), 70101(6). There are several Maritime Security Levels ("MARSEC Levels") depending on the risk of a transportation security incident. All MARSEC Levels require security measures to "[s]creen persons, baggage (including carry-on items), personal effects, and vehicles for dangerous substances and devices[.]" 33 C.F.R. § § 104.265(d)(2), 105.265(b)(3). "Screening" is defined as "a reasonable examination of persons, cargo, vehicles, or baggage for the protection of the vessel, its passengers and crew." 33 C.F.R. § 101.105.

USCG vessel security requirements provide that certain vessel owners and operators are required to conspicuously post signs stating: "(i) Boarding the vessel is deemed valid consent to screening or inspection; and (ii) Failure to consent or submit to screening or inspection will result in revocation of authorization to board." 33 C.F.R. §§ 104.265(d)(3), 105.5255(d)(3). Here, a sign in conformity with the USCG security requirements above was posted at the ferry loading area. *See, e.g.,* Dkts. 114, at 14, 18; 116, at 2–3.

HMS and PCFS ferries are passenger vessels of at least 100 gross register tons or are certified to carry more than 150 passengers and are therefore subject to the USCG regulations above.[2] *See* 33 C.F.R. §§ 104.105(a)(5)–6, 105.105(a)(5)–(6); Dkt. 131.

The Fourth Amendment provides that the federal government shall not violate "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. A search conducted by private individuals at the instigation of a government officer or authority constitutes a governmental search for purposes of the Fourth Amendment. *Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 614 (1989).

---

[2] Plaintiff argues without citation to any supporting authority that the vessels operated by HMS Ferries are not over 100 gross tons. Dkt. 142, at 12.

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT - 9

"[T]he ultimate measure of the constitutionality of a governmental search is 'reasonableness.'" *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995). Courts judge the reasonableness of a search "by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id*. at 652–53 (internal quotation marks omitted). When law enforcement officials undertake a search to discover evidence of criminal wrongdoing, the Supreme Court has held that reasonableness generally requires those officials to obtain a search warrant. *Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602 (1989). Such warrants cannot be obtained without a showing of probable cause. *Id.*

However, in special circumstances, the Supreme Court has held that a search warrant, and the requisite showing of probable cause, are not required. A search unsupported by probable cause may be constitutional "when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Griffin v. Wisconsin,* 483 U.S. 868, 873 (1987).

In applying the special needs doctrine, courts must assess the constitutionality of the challenged conduct by weighing the government conduct—in light of the special need and against the privacy interest advanced—through an examination of three factors: (1) the nature of the privacy interest involved; (2) the character and degree of the governmental intrusion; and (3) the nature and immediacy of the government's needs, and the efficacy of its policy in addressing those needs. *See Cassidy v. Chertoff*, 471 F.3d 67, 75 (2d Cir. 2006).

In consideration of these factors, other courts have held that USCG-required administrative searches permitting searches of passenger vehicle trunks and baggage are constitutional. *See id.* (holding that a warrantless, suspicionless USCG-required administrative search of a passenger's vehicle trunk was constitutional, minimally intrusive, and "reasonably

efficacious in serving the government's undisputedly important special need to protect ferry passengers and crew from terrorist acts"); *see also Nat'l Treasury Employees Union v. Von Raab,* 489 U.S. 656, 675 n.3 (1989) ("applying our precedents dealing with administrative searches, … the lower courts that have considered the question have consistently concluded that such searches are reasonable under the Fourth Amendment"). Here, each of the three factors weigh strongly against Plaintiff's claim.

Plaintiff's Fourth Amendment claim is without merit. Neither of the searches alleged in the operative complaint violated Plaintiff's rights under the Fourth Amendment. The ferry loading area had a conspicuously posted sign providing that failure to consent or submit to screening or inspection will result in revocation of authorization to board. *E.g.,* Dkts. 114, at 14, 18; 116, at 2–3. The alleged searches were consistent with the government's special need to prevent and deter terrorist attacks and to safeguard the nation's maritime and transportation infrastructure. *See Cassidy*, 471 F.3d at 74. This important special need dwarfs Plaintiff's privacy interest in avoiding minimally invasive vehicle screening and training exercises.

Therefore, Defendants HMS Ferries and Mr. Caputo's Motion for Summary Judgment should be granted as to its request to dismiss Plaintiff's § 1983 Fourth Amendment claim.

4. Fourteenth Amendment Claim

i. *Substantive Due Process*

Under the Fourteenth Amendment's substantive due process prong, courts apply the "shocks the conscience" test. *Fontana v. Haskin,* 262 F.3d 871, 882 (9th Cir. 2001) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). The threshold question is "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 848 n.8.

Plaintiff's Fourteenth Amendment claim is inadequately pled and is without merit. The operative complaint provides as follows: "When Steve Caputo while acting as General Manager, knowingly caused misleading false witness statements and incident report [*sic*] to be submitted to public officials he violated the plaintiff's due process rights under U.S.C.A. Constitution *Amendment 14; 42 U.S.C.A.*" Dkt. 83, at 13 (emphasis in original).

Plaintiff's claim is defective for at least two reasons. First, Plaintiff provides only a bare allegation with no factual support. Second, nothing Plaintiff alleged shocks the conscience. *See Rochin v. California*, 342 U.S. 165, 169 (1952) (conduct of a government official that shocks the conscience "offends those canons of decency and fairness which express the notions of justice of English-speaking peoples.").

    ii.  *Equal Protection*

"To state a claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington,* 152 F.3d 1993, 1194-95 (9th Cir. 1988).

To the extent Plaintiff alleges that HMS Ferries and Mr. Caputo violated his rights under the Equal Protection Clause of the Fourteenth Amendment, that claim is inadequately pled. Although the instant Motion for Summary Judgment discusses the Equal Protection Clause (Dkt. 130, at 15), it does not appear that Plaintiff alleged such a claim against HMS Ferries and Mr. Caputo, nor has Plaintiff shown that he is a member of a protected class or that the defendants acted with an intent or purpose to discriminate against him based upon his membership in a protected class. *See* Dkts. 83; and 142.

Therefore, Defendants HMS Ferries and Mr. Caputo's Motion for Summary Judgment should be granted as to its request to dismiss Plaintiff's § 1983 Fourteenth Amendment claims.

5. *Monell* & HMS Ferries

A municipality cannot be held liable for violation of civil rights solely because an employee is a tort-feasor; a municipality cannot be held liable under the Civil Rights Act of 1871 on a respondeat superior theory. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012) (holding "that the requirements of *Monell* do apply to suits against private entities under § 1983"). "A local government entity cannot be held liable under § 1983 unless the plaintiff alleges 'that the action inflicting injury flowed from either an explicitly adopted or a tacitly authorized [governmental] policy.'" *Ortez v. Washington Cty., State of Or.*, 88 F.3d 804, 811 (9th Cir. 1996) (quoting *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986)).

A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom supporting municipal liability under § 1983, but there are three situations in which isolated constitutional violations are sufficient to establish a municipal policy: (1) when the person causing the violation has final policymaking authority; (2) if the final policymaker ratified a subordinate's actions; and (3) if a final policymaker acted with deliberate indifference to a subordinate's constitutional violations. *Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999). A Municipality may be liable for an isolated constitutional violation when a final policymaker ratifies a subordinate's actions. *Id.* at 1238.

Plaintiff has not shown that his injuries flowed from any actions taken pursuant to an official policy or custom or from inadequate training. Although Plaintiff alleges that the May 18, 2018 search was retaliatory, he has not connected that alleged search with any longstanding

practice or custom. Nor has Plaintiff shown that Mr. Caputo or HMS Ferries had final policymaking authority with respect to mandatory security regulations promulgated by the USCG. *See* Dkt. 142, at 21–22.

Therefore, Defendants HMS Ferries and Mr. Caputo's Motion for Summary Judgment should be granted as to its request to dismiss Plaintiff's § 1983 claims under *Monell*.

   6. Conclusion

As discussed above, Plaintiff's § 1983 claims against HMS Ferries and Mr. Caputo alleging violations under the First, Fourth, and Fourteenth Amendments are inadequately pled and without merit. Therefore, the Court should grant HMS Ferries and Mr. Caputo's Motion for Summary Judgment re Dismissal of Plaintiff's 42 U.S.C. § 1983 Claims (Dkt. 130).

**D. PLAINTIFF'S 42 U.S.C. § 1983 CLAIMS AGAINST HMS EMPLOYEE DEFENDANTS**

HMS Employee Defendants request dismissal of Plaintiff's § 1983 claims against them. Dkt. 122. HMS Employee Defendants argue that "[n]ot only does plaintiff fail to allege that any of the individual defendants participated in the alleged civil rights violations, he acknowledges they did not." Dkt. 122, at 1.

The Court is unable to glean from the operative complaint how the individual HMS Employee Defendants (Ms. Reynolds, Ms. Miller, Mr. Ripa, Mr. De Lango, and Mr. Leenstra) relate to Plaintiff's claims. *See* Dkt. 83. The operative complaint's Statement of Claim (factual background) section does not name any of the individual HMS Employee Defendants or describe how they participated in or caused the alleged search events. Dkt. 83, at 8–12. And Plaintiff's response brief offers almost no clarification. *See* Dkt. 140. Plaintiff simply writes that the complaint "clearly names" them as HMS Ferries employees and then copies his § 1983 claims against them from the complaint, which are as follows: "When HMS Global Maritime, Inc.,

(HMS) and/or HMS Ferries, Inc, [*sic*] and/or *their employees* acted jointly to conduct suspicion-less, warrantless, arbitrary, retaliatory, highly intrusive search of the plaintiffs [*sic*] vehicle and personal belongings they violated the plaintiff [*sic*] forth [*sic*] Amendment rights under the US Constitution[.]" Dkt. 140, at 2 (quoting from the operative complaint, Dkt. 83, at 12) (emphasis added).

Plaintiff's claims are made somewhat more clear in light of a description of the events offered by HMS Employee Defendants—although it appears that at least portions of the description may be in dispute. Dkt. 122, at 2–5. The HMS Employee Defendants' description explains that the May 17, 2018 search event involved Mr. Caputo, who was joined by two vehicle screening exercise trainees, Ms. Reynolds and Ms. Miller. Dkt. 122, at 3. The description provides that Ms. Reynolds and Ms. Miller did not respond to Plaintiff and did not search his vehicle. Dkt. 122, at 3-4.

The description further explains that Mr. Ripa, Mr. De Lango, and Mr. Leenstra participated in the May 18, 2018 vehicle screening training exercise. Dkt. 122, at 4 n.23. The description provides that Mr. Leenstra had been called away prior to Mr. Caputo's encounter with Plaintiff, but that, afterward, Mr. Caputo radioed Mr. Leenstra and told him to contact the police. Dkt. 122, at 4–5. The description claims that no one else was with Mr. Caputo when he told Plaintiff that he could not board the ferry. Dkt. 122, at 5.

Plaintiff's § 1983 claims against the HMS Employee Defendants are inadequately pled and without merit. Plaintiff sets forth no explanation of how HMS Employee Defendants violated Plaintiff's constitutional rights under the Fourth Amendment. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[In] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As

discussed above in § II(C)(3), neither of the searches alleged in the operative complaint violated Plaintiff's rights under the Fourth Amendment—and Plaintiff has not explained how the HMS Employee Defendants participated in those alleged searches.

To the extent that the operative complaint's references to unnamed ticketing agents, ferry captains, and ferry employees are intended to refer to individual HMS Employee Defendants, Plaintiff has not shown that those individual defendants have a causal connection to the alleged search. *See Jones v. Williams,* 297 F.3d 930, 938-39 (9th Cir. 2002) (holding that "mere presence at a search or membership in a group, without personal involvement in and a causal connection to the unlawful act, [does not] create liability under section 1983").

Therefore, HMS Employee Defendants' Motion for Summary Judgment re 42 U.S.C. § 1983 Claims (Dkt. 122) should be granted.

**E. PLAINTIFF'S STATE LAW CLAIMS**

HMS Defendants request dismissal of Plaintiff's three remaining state law claims: (1) outrage (2) fraud, and (3) violation of a criminal statute, RCW 9A.76.175. Dkt. 114.

1. <u>Outrage</u>

Plaintiff's outrage claim is as follows in the operative complaint: "When Pierce County and HMS Defendant(s) failed to consciously give ample notice to all ferry passenger's [*sic*] and the plaintiff prior to entering Searchable Areas, Ticketing Booth, or Pierce County Ticketing phone App they failed to provide proper notice causing the plaintiff to suffer actionable emotional distress and provides [*sic*] a basis for an award of punitive damages." Dkt. 83, at 12. The complaint continues, "Defendant(s) jointly caused the Intentional Infliction of Emotional Distress upon the Plaintiff when they while acting under the color of law jointly restrained the

plaintiff without legal cause and thereby caused the plaintiff to suffer damages to be determined at trial." Dkt. 83, at 13.

Under Washington law, a plaintiff must prove the following elements to prevail on an outrage claim: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff." *Reid v. Pierce County* 136 Wn.2d 195, 201–02 (1998).

None of the Plaintiff's allegations amount to extreme and outrageous conduct. *See id.* at 202 (providing that extreme and outrageous conduct is only "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bound of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"). Moreover, as to the HMS Employee Defendants, Plaintiff has not shown that they participated in the alleged search events. *See* § II(D), *supra*.

Therefore, HMS Defendants' Motion for Summary Judgment Dismissing State Law Claims should be granted as to its request to dismiss Plaintiff's outrage claim.

2. <u>Fraud</u>

Plaintiff's fraud claim is as follows: "Pierce County jointly further conspired with the HMS defendant(s) and other Pierce County employees to the harm of the plaintiff by fraudulently claiming an investigation of the defendant's damages took place, when in fact no or little investigation had actually taken place." Dkt. 83, at 12.

Federal and Washington law require that, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); CR 9(b).

Under Washington law, the elements of a fraud claim are as follows:

> (1) Representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Adams v. King County,* 164 Wn.2d 640, 662 (2008).

Plaintiff's fraud claim is inadequately pled and is meritless. Plaintiff has not pled these elements with sufficient particularity in his complaint, nor has he offered evidence in support of each element. Moreover, Plaintiff's responsive arguments are conclusory, lack citation to authority, and are without merit. *See* Dkt. 141, at 7-9.

Therefore, HMS Defendants' Motion for Summary Judgment Dismissing State Law Claims should be granted as to its request to dismiss Plaintiff's claim of fraud.

3. RCW 9A.76.175

Plaintiff's claim is as follows: "Defendant Steve Caputo jointly with other HMS employee(s) while acting under the color of state [*sic*] did cause a misleading report and witness statements to be provided to a public servant during an investigation on violation of RCW 9A.76.175." Dkt. 83, at 8.

RCW 9A.76.175 provides that "[a] person who knowingly makes a false or misleading material statement to a public servant is guilty of a gross misdemeanor."

Plaintiff's claim is without merit. Plaintiff has shown no statutorily provided private cause of action as to RCW 9A.76.175—a criminal statute. *See Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 209 (2013) (holding that a case brought by a private individual may not maintain a public cause of action, such as a case alleging violation of a criminal statute).

Washington courts recognize that a statute may create an implied private cause of action when the legislature did not expressly provide an adequate remedy for violations of statutory rights. *Cazzanigi v. Gen. Elec. Credit Corp.,* 132 Wn.2d 433, 445, 938 P.2d 819 (1997); *Bennett v. Hardy*, 113 Wn.2d 912, 919–20 (1990). To determine whether a statute creates an implied private cause of action, courts examine three factors: (1) whether the plaintiff is a member of the class for whose "especial" benefit the legislature enacted the statute, (2) whether explicit or implicit evidence of legislative intent supports recognition of a private cause of action, and (3) whether an implied private cause of action is consistent with the statute's underlying purpose.[3] *Bennett*, 113 Wn.2d at 920–21. Here, none of the factors weigh in favor of an implied private cause of action—nor has Plaintiff shown that the legislature has not provided another adequate remedy for violations of his statutory rights.

Therefore, HMS Defendants' Motion for Summary Judgment Dismissing State Law Claims should be granted as to its request to dismiss Plaintiff's claim alleging violation of RCW 9A.76.175.

4. Conclusion

Plaintiff's claims are improperly pled, and he does not raise genuine issues of material fact that would support his claims. Therefore, the Court should (1) grant HMS Ferries and Mr. Caputo's Motion for Summary Judgment re Dismissal of Plaintiff's 42 U.S.C. § 1983 Claims (Dkt. 130); (2) grant HMS Employee Defendants Motion for Summary Judgment re 2 U.S.C. § 1983 Claims (Dkt. 122); and (3) grant HMS Defendants' Motion for Summary Judgment Dismissing Plaintiff's State Law Claims (Dkt. 114).

---

[3] The purpose of RCW 9A.76.175 is "for the immediate preservation of the public peace, health, or safety, or support of the state government and its existing public institutions, and shall take effect July 1, 1995." RCW 48.30A.900.

There are no remaining claims against the remaining defendants. Therefore, this case should be dismissed.

### III. ORDER

Therefore, it is hereby **ORDERED that:**

- Defendants HMS Ferries, Inc. and Steve Caputo's Motion for Summary Judgment re Dismissal of Plaintiff's 42 U.S.C. § 1983 Claims (Dkt. 130) is **GRANTED;**

- Defendants Tara Reynolds, Mylinda Miller, Thomas Ripa, Dominick De Lango, and Derick Leenstra's Motion for Summary Judgment re 42 U.S.C. § 1983 Claims (Dkt. 122) is **GRANTED;**

- Defendants HMS Ferries, Inc., Steve Caputo, Mylinda Miller, Tara Reynolds, Derick Leenstra, Thomas Ripa, and Dominick De Lango's Motion for Summary Judgment Dismissing Plaintiff's State Law Claims (Dkt. 114) is **GRANTED;** and

- This case is **DISMISSED.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 6th day of January, 2020.

ROBERT J. BRYAN
United States District Judge